OPINION OF THE COURT
Joan S. Kohout, J.
A petition for private placement adoption has been filed by Katherine and Timothy F. concerning an infant boy born on November 24, 1995. The child’s mother and her husband executed consents to the adoption. It is agreed that the mother’s husband is not the biological father of the child.
The issue presented here is whether certain expenses paid by the adoptive parents through their attorney to the biological mother and a rental agent are allowable under New York law. The court has permitted petitioners to supplement their original papers with additional affidavits and offered them the opportunity to more fully develop the record at a hearing. No request has been made for a hearing. The court, therefore, makes its decision based upon the following documents filed by *944 petitioners: the petition for adoption, affidavit of financial disclosure of adoptive parents (undated), attorney’s affidavit regarding approval of living expenses (May 24, 1996), and exhibits attached thereto, the supplemental affidavit of the mother (May 10, 1996), and the amended attorney’s affidavit (June 17, 1996).
THE FACTS
The adoptive parents have paid a total of $883.60 for counseling services for the mother, unknown amounts for uninsured medical expenses, travel expenses of $25, $1,600 for living expenses paid to the mother and $240 paid to a rental agent for rent. In addition, an unknown amount has been paid or is due to the mother’s lawyer.
The biological mother confirms the counseling costs and that an unknown amount has or will be paid for her medical expenses. Regarding the living expenses she states in an affidavit dated May 10, 1996: "I received a weekly allowance from August 14, 1996 [szc] through October 21, 1996 [szc] of $75.00 per week and from October 22, 1996 [szc] through December 9, 1996 [szc] (approximately 13 days after I gave birth to baby boy b.), the allowance was $100.00 per week.” Undoubtedly, the mother was referring to the payments made between August and December 1995 not 1996, as stated in the affidavit.
The mother’s affidavit further states that during this period she resided with her husband, from whom she claims to have been estranged, and her two children. She claims that her circumstances were desperate and that her husband agreed to provide "minimal shelter” for her and the children, but required her to contribute to household expenses. She further states that while she lived with her husband and received the "allowance” from the adoptive parents "the total living expenses for the household and food for her and her children was approximately $700 per month, including rent, food, personal expenses, electricity and telephone.”
The weekly payments were made directly to the mother by petitioner’s attorney, who states in her affidavit that a total of $1,600 was paid between August 14, 1995 and December 6, 1995. Additionally, the attorney paid $240 for rent for the mother for October 1995 directly to ACME Rental.
CONCLUSIONS OF LAW
New York State has long had a strong public policy against the payment of non-pregnancy-related fees or expenses to nat *945 ural parents in order to deter "trafficking” in children. (See, Matter of Paul, 146 Misc 2d 379, 383 [1990]; Matter of Jose L., 126 Misc 2d 612, 614 [1984].)
Social Services Law § 374 (6) permits the payment of "reasonable and actual medical fees or hospital charges for services rendered in connection with the birth of such child or other necessary expenses incurred by the mother in connection with or as a result of her pregnancy or the birth of the child” (emphasis added).
Additionally, no person is permitted to request, accept or receive anything of value in the placing out of a child for adoption or for assisting a parent to place a child for adoption. (Social Services Law § 374 [6].) A violation of this section is punishable as a criminal offense. (Social Services Law § 389 [2].)
In order for the court to determine the appropriateness of fees and expenses the adoptive parents are required to submit an affidavit "describing all fees, compensation and other remunerations paid by such parent or parents on account of or incidental to the birth or care of the adoptive child * * * and on account of or incidental to assistance in arrangements for such placement or adoption.” (Domestic Relations Law § 115 [8].) Additionally, counsel for the petitioners must submit a fees affidavit. (22 NYCRR 205.53 [b] [7].)
The adoptive parents must also file an affidavit of financial disclosure to include the terms of any agreement with an attorney regarding fees, not limited to retainer fees or expenses "incidental to the placement or adoption of the child” and the amount of fees paid to any person, as well as the reason for the fee. (22 NYCRR 205.53 [b] [8] [v], [vi].)
There is no provision for the advance approval of fees or expenses, a procedure petitioner’s counsel claims is permitted by courts in other counties. Indeed, Family Court has no authority to issue advisory opinions, especially when there is no action pending. Moreover, an adoption petition cannot be filed until after a child is born and a natural parent cannot consent to an adoption prior to the birth. (See, Anonymous v Anonymous, 108 Misc 2d 1098, 1101 [1981].)
Although the statutes do not specifically define allowable birth- and adoption-related costs, in the few reported cases courts have tended to interpret the provisions restrictively. For example, food and living expenses for the mother for 13 weeks prior to birth and 5 weeks after delivery were disal *946 lowed in Matter of Anonymous (131 Misc 2d 666 [1986]). Reimbursement for an automobile down payment for the natural mother was disallowed and a reduction of $1,250 imposed in an allowance for "rent, food, the purchase of furniture, utilities, and other living expenses” in Matter of Alyssa L. B. (131 Misc 2d 755 [1986]). It was determined that a natural mother was not entitled to reimbursement for the expenses in raising her one-year-old child in Matter of Kendrick G. (114 Misc 2d 483 [1982]). Wages lost by the mother due to pregnancy were not allowed by the Surrogate in Matter of Anonymous (133 Mise 2d 741 [1986]; but see, Matter of Baby Boy, 146 Misc 2d 896 [1990]).
A review of the affidavits presented here shows that payments were made by the petitioner’s attorney directly to the biological mother to cover living expenses while she resided in an apartment with her husband and children. No breakdown is provided as to what, if any, expenses are claimed to be directly attributable to the mother’s pregnancy; for example, additional food expense. Instead, it is claimed that the money provided by the adoptive parents was used to support the mother and her children.
The mother’s husband, who is not the baby’s father, clearly benefitted from the allowance as well since money went for rent, utilities, personal expenses and other costs of maintaining the household. The husband had a legal duty to support his wife and child (one child apparently is not his). The mother claims that she was in dire financial need and that the allowance was, therefore, required for her health and safety and that of her children. This claim, however, is belied by the fact that her husband provided a home for her and was legally obliged to provide her with financial support.
The court finds that the living expenses paid to the mother and the rent paid to ACME Rental must be disallowed since it has not been demonstrated that they were related to the mother’s pregnancy or were expenses of the adoption. The counseling expenses of $883.60 and the transportation costs are proper and will be allowed.
REMEDY
Courts have taken various approaches when adoption fees have been disallowed. The statute is silent as to a remedy, and there are practical problems associated with recovering payments made to a person or agency which is not a party to the adoption.
*947 A review of the reported decisions reveals that some courts have simply disallowed fees or expenses and have not directed the manner for repayment. (See, Matter of Anonymous, 133 Misc 2d 741 [1986], supra-, Matter of Kendrick G., 114 Misc 2d 483 [1982], supra.) Another approach is to direct that the payments be refunded by the natural parent to the adoptive parents (Matter of Alyssa L. B., 131 Misc 2d 755 [1986], supra) or repaid by the attorney for petitioners (Matter of Anonymous, 131 Misc 2d 666 [1986], supra). In one case involving the unauthorized placing out of a child the court denied the adoption petition, directing that the child be returned to the natural mother or placed with an authorized agency. (Matter of Anonymous, 46 Misc 2d 928 [1965].)
In this case the unauthorized payments were made by petitioner’s counsel and upon her advice. Therefore, it is appropriate to require counsel to refund to petitioners all funds forwarded to the mother for living expenses ($1,600) and to the apartment rental agency for rent ($240). Counsel is encouraged to recover these payments from the natural mother, but repayment to petitioners is not conditioned upon such recovery. An affidavit of counsel is to be submitted to the court within 30 days of this decision and order, attesting to compliance.
Additionally, affidavits are to be submitted stating the amounts of any medical bills for the mother and child paid or payable by the adoptive parents, as well as the fee for the mother’s attorney, including an itemized bill outlining all services provided.